Walter Foster, Trustee, Appellant, v. Frank Staar et
al., Appellees.

Gen. No. 14,562.

1. Corporations—*when payment for stock subscribed may prop-
erly be made.* Payment of stock subscriptions to a corporation need
not be made until after the charter has been issued, as until such
time no legal entity exists.

2. Corporations—*when organization not in fraud of creditors.*
The organization of a corporation is not in fraud of creditors where
there is no effort or purpose shown by the evidence to simulate a
compliance with the law or to create a fictitious or deceptive corpora-
tion for any fraudulent or dishonest purpose.

Bill for receiver. Appeal from the Circuit Court of Cook county;
the Hon. Charles M. Walker, Judge, presiding. Heard in the
Branch Appellate Court at the March term, 1908. Affirmed. Opin-
ion filed June 4, 1909.

Statement by the Court. December 7, 1907, Wal-
ter Foster, trustee in bankruptcy of Hip Lung, appel-.
lant, filed a bill of complaint in the Circuit Court
against Moy Tong Hoy and Moy Tong Yee, and Frank
Staar, alleging that prior to and at the time of the

bankruptcy of Hip Lung, said Hip Lung, Moy Tong Hoy and Moy Tong Yee were copartners engaged in a grocery business at 323 South Clark street, Chicago, and that by reason of the bankruptcy the copartnership was dissolved, and Moy Tong Hoy and Moy Tong Yee had failed to account and had denied the partnership.

After amendments had been filed to the bill, on December 9, 1907, the court appointed Barry Herzberger receiver "to take charge of the effects and property, and to receive the outstanding effects of the copartnership composed of Hip Lung, Moy Tong Chen or Jon and Moy Tong Yee, doing business under the name of Hip Lung Ying Kee & Co."

Under the authority of this appointment Herzberger took possession of the place of business and property of the appellee, Hip Lung Ying Kee & Co., a corporation, at 323 South Clark street, Chicago.

December 10, 1907, leave was given Hip Lung Ying Kee & Co., a corporation, appellee, to file an intervening petition. The petition was thereupon filed and alleges that Hip Lung Ying Kee & Co. is a corporation organized and incorporated under the laws of Illinois, on November 16, 1907, with an authorized capital stock of seventeen thousand dollars, for the purpose of conducting, operating, owning and managing a Chinese grocery and dry-goods store for the importing and sale of all kinds of Oriental merchandise; that on November 19, 1907, it purchased from Moy Tong Hoy and thirty-five associates, the property and business theretofore conducted by them at 323 South Clark street, paying them therefor $4,900, and immediately obtained possession thereof, and has since that time and until December 9, 1907, been in undisputed possession, conducting the business provided by its charter; that on December 9, 1907, Barry Herzberger, accompanied by several associates, took possession of said place of business by force, and deprived the petitioner, its officers and agents, of all control of the

same, drilled the safe and took therefrom $200 in cash; that said Herzberger claimed to be acting by virtue of an order of court appointing him receiver.

The petition prayed that an order be entered directing said receiver to vacate said premises and surrender and deliver possession to petitioner of all property and effects so forcibly seized by him.

Leave was given to all parties to the suit to answer the petition, and the answer of appellant having been filed, the issues on the petition and answer were referred to a master in chancery to take proof and report to the court whether or not the prayer of the petition should be granted. Appellant's answer denied that petitioner was a corporation, that it purchased from Moy Tong Hoy and thirty-five associates the property and business in question; denied that petitioner had been in possession of the business, and that Herzberger and others committed trespasses against the petitioner.

December 19, 1907, on the coming in of the master's report, the court entered a decree appealed from in this case. By that decree Barry Herzberger, receiver, was ordered to "forthwith surrender and deliver up to said intervening petitioner the possession of the premises at No. 323 South Clark street and all the property, effects, merchandise, moneys, papers and documents therein, heretofore seized and taken possession of by said receiver and now in his possession." The court further ordered that Walter Foster, trustee, etc., and Barry Herzberger pay the costs, taxed at $148.

LOUIS GREENBERG, for appellant; EDWARD H. MORRIS, of counsel.

BULKLEY, GRAY & MORE, for appellee.

MR. PRESIDING JUSTICE SMITH delivered the opinion of the court.

Two errors are assigned on the decree: First, that

the court erred in ordering the property in the possession of the receiver to be restored to the intervening petitioner; and second, the court erred in overruling the exceptions to the master's report. On these assignments of error, the main argument of counsel for appellant is devoted to the establishment of the proposition that the intervening petitioner Hip Lung Ying Kee & Co. was fraudulently organized and incorporated. This contention is based upon the evidence in the record tending to show that the capital paid in by the subscribers to the capital stock at the time of the formation of the corporation was not paid to the corporation prior to the filing of the report of the commissioners with the secretary of state, November 15, 1907, but afterwards, on November 26, 1907; and that therefore the report of the commissioners was false and fraudulent.

The question thus presented in this proceeding is not precisely the question which would be presented in a direct proceeding by *quo warranto*, in a court of law, but, it is a question of fraudulent organization, or such fraud in the organization of the intervening petitioner, which will prevent it from coming into a court of equity and asserting any rights, because it has no existence as a legal entity upon the familiar principle that fraud vitiates every transaction.

Under the amendatory act of 1905, the commissioners are required to make and file in the office of the secretary of state a full report of their proceedings, including therein "a copy of the subscription list, a statement of the amount of the capital, not less than one-half actually paid in, the amount of such capital not paid in, what disposition has been made of stock subscribed and not paid, and if any portion of the capital has been paid in property, the same shall be appraised by said commissioners, and they shall report the fair cash value thereof."

The commissioners' report states that the amount of capital stock actually paid in is $17,000; that the

property paid in on capital stock was appraised at $4,250, which was applied on the shares of each subscriber *pro rata*, and the balance paid in full on said stock in cash.

Aside from the report of the commissioners, the evidence shows that all of the capital stock subscribed had been paid in full and there is no direct evidence in the record that one-half of the capital subscribed had not been paid in to the commissioners or to the directors prior to the making of the report of the commissioners. There is no evidence in the record showing or tending to show that the subscribers to the capital had not arranged and provided for the payment to the corporation the full amount of the capital stock, as the commissioners reported, as soon as the final certificate could be issued, and the legal payment could be made. This was done. The obligations of the subscribers to the capital stock of the corporation were to the corporation. There was no corporation to which payments could be made until the final certificate was issued, and then payments were promptly made before the corporation assumed to transact any business.

To whom under the statute could the subscriptions be paid before the report of the commissioners was filed with the secretary of state? The act does not provide. It may be, as contended by appellant, that the statute by implication confers the authority to receive the money or property in payment of stock subscriptions upon the commissioners or upon the directors, to hold in trust for the corporation. This question we are not called upon to decide on this record. We are here concerned only with an alleged fraud which, it is claimed, wholly invalidates in equity the organization of the intervening petitioner, when the issue is raised in a proceeding in a court of equity, by a party having no contractual relations with it, express or implied, who has voluntarily and without equitable right or priority of lien, as shown by the

evidence, obtained possession of the property of the intervenor. In our opinion the evidence shows no fraudulent intent on the part of the subscribers to the stock or the commissioners appointed to organize the corporation. It fails to show any actual fraud, either upon appellant or any other person. The subscriptions to stock were all genuine and were paid in full. There was no effort or purpose shown by the evidence to simulate a compliance with the law, or to create a fictitious or deceptive corporation for any fraudulent or dishonest purpose. On the contrary, the intervening petitioner was organized for the legal and legitimate purpose of conducting a lawful business.

In Martin v. Ohio Stove Co., 78 Ill. App. 105, cited by appellant, the question was whether a foreign corporation could become a stockholder or an incorporator in an Illinois corporation, and it was held that it could not. Beyond all question the decision of the court is in accord with the laws of Illinois.

In Jersey City Gas Co. v. Dwight, 29 N. J. Eq. 242, on which appellant relies, the Gas Company brought suit against thirteen defendants, charging them with an invasion of its franchises. The defendants undertook to justify, claiming corporate existence, and failed. The court held that "defendants have attempted to acquire corporate life and power by a feigned compliance with the law, and their efforts must be adjudged abortive." No such question is presented by this record.

In Booth v. Bunce, 33 N. Y. 139, also cited by appellant, the questions submitted to the jury were, first, whether the corporation was formed to defraud creditors of Montgomery & Lund; and second, whether it was formed to hinder, delay or defraud the plaintiff Booth. The court held that the evidence submitted warranted the verdict of the jury in favor of the plaintiff. This was simply applying the principle that if the persons constituting a partnership form a cor-

poration and transfer their assets and property to it, creditors of the partnership at the time of the transfer may have the question examined as to whether or not the corporation was organized to defraud them. If such was the fact, the corporation took no title as against such creditors. No such question is involved here. And so with the other cases cited by appellant; the principles announced in them are sound, but they are not applicable to the case before us.

What we have said above disposes of the error assigned on the overruling of the exceptions to the master's report.

The decree is correct, in our opinion, and it is therefore affirmed.

*Affirmed.*